# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GARY GAUS,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:17-1053** |
| | : | |
| **v.** | : | **(JUDGE MANNION)** |
| | : | |
| **POCONO MOUNTAIN REGIONAL POLICE COMMISSION*, et al.,*** | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Before the court is the partial motion to dismiss the amended complaint of plaintiff Gary Gaus, a former police officer with the Pocono Mountain Regional Police Department who was terminated, filed by defendants, Pocono Mountain Regional Police Commission ("PMRPC"), David Moyer, Francis DePiano, Frederick Courtright, Juan Adams, John Jablowski, Michael Oser, Brandon Igdalsky, Alma Ruiz-Smith, Lynn Kelly, Ralph Megliola, Anne Lamberton (the "Individual Commissioners"), Barrett Township, Mount Pocono Borough, Coolbaugh Township, Tobyhanna Township, Tunkhannock Township ( the "'Member Municipalities"), Pocono Mountain Regional Police Department ("PMRPD"), and Chief Christopher Wagner ("moving defendants"). Plaintiff raises procedural due process claims alleging that he had a protected property interest in his job and that defendants failed to give him a post-termination hearing, as well as state law claims, including violation of the Pennsylvania Sunshine Act, and a Pennsylvania common law claim.

Based on the following analysis, defendants' motion will be **GRANTED IN ITS ENTIRETY**.

## I.    BACKGROUND[1]

In 1993, Tobyhanna and Mount Pocono entered into an "Agreement of Pocono Mountain Regional Police" (the "Agreement"), which created PMRPC and PMRPD, with the purpose of providing police services in the two municipalities. The Agreement was later modified to include the municipalities of Tunkhannock, Coolbaugh and Barrett. As such, PMRPC and PMRPD provide law enforcement coverage to Tobyhanna, Mount Pocono, Tunkhannock, Coolbaugh and Barrett, i.e., the Member Municipalities. The Agreement also provides that PMRPC is governed by a joint commission of people who represent the Member Municipalities. The 11 Individual Commissioners are defendants Moyer, Depiano, Courtright, Adams, Jablowski, Oser, Igdalsky, Ruiz-Smith, Kelly, Megliola, and Lamberton. The Agreement gives the PMRPC authority to provide police services to the Member Municipalities as well as the power to hire, fire, suspend, promote, demote, discipline, set salaries, and deal with other matters involving

---

[1]All facts are taken from plaintiff's amended complaint, (Doc. 9), unless otherwise noted. The facts alleged in plaintiff's amended complaint must be accepted as true in considering the defendants' motion to dismiss. *See* Dieffenbach v. Dept. of Revenue, 490 Fed.Appx. 433, 435 (3d Cir. 2012); Evancho v. Evans, 423 F.3d 347, 350 (3d Cir. 2005).

employees. The Agreement also gives the PMRPC authority to delegate powers to the Chief of Police and, it has delegated its authority to discipline, suspend and fire employees to the Chief. Further, disciplinary action under the PMRPD's Code of Conduct is determined by the Chief.

Plaintiff became a police officer with PMRPD in 1992. He was later promoted to patrolman, and he continued to work as such until January 2017. Wagner became PMRPD's Chief of Police in 2014 having previously worked as a police officer for the department. Plaintiff and Wagner had personal differences and did not get along with each other. In fact, after Wagner became Chief, he stated to other officers that plaintiff "had no future" with PMRPD.

PMRPD had a timekeeping policy which included a requirement that each officer had to complete a daily patrol log detailing the tasks and services he/she performed during the day's shift, the time spent in performing such tasks and services, and for which Member Municipality the services were performed. Plaintiff alleges that PMRPD also had an illegal quota system that required its officers to issue a certain number of traffic citations per month and, that he was disciplined in 2015 and 2016 for not writing enough citations. Plaintiff also alleges that although his supervisors knew he took his breaks at home and acquiesced to this practice, provided that he respond to service calls in his zone, Chief Wagner commenced an investigation into him for taking breaks at home while he was on duty.

Following the investigation, Wagner suspended plaintiff and placed him on paid administrative leave on December 28, 2016, based on the following charges: failure to stay in the assigned zone and engage in "proactive policing" during his shifts; departure from the assigned zone without permission; neglecting duties by engaging in personal matters while working; inaccurately documented activities in patrol logs; and failure to follow orders. Plaintiff alleges that "proactive policing" referred to PMRPD's and Chief Wagner's "euphemism for their illegal quota system."

On January 5, 2017, Chief Wagner conducted a pre-termination hearing regarding the charges against plaintiff, i.e., a "*Loudermill*" hearing. *See* Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487 (1985). Plaintiff testified at the hearing and explained that his patrol logs were correct and made pursuant to Lieutenant Laverty's timekeeping directive and, that he took breaks at his home to administer medication to his dog, which his superiors knew about and approved. In fact, plaintiff was never disciplined regarding his timekeeping and his breaks at home.

After the evidentiary hearing, and on the same day, Chief Wagner met with the PMRPC in a closed executive session before its regularly-scheduled monthly public meeting, and Wagner advised the Individual Commissioners about the details of plaintiff's *Loudermill* hearing. Wagner then informed the Individual Commissioners that he was terminating plaintiff's employment. Wagner had to notify the Individual Commissioners about his decision since

4

PMRPC had a policy requiring the advice and consent of the Individual Commissioners prior to any termination of a police officer. During the executive session, none of the Individual Commissioners objected to Chief Wagner's decision to terminate plaintiff's employment. As such, Plaintiff alleges that the Individual Commissioners took official action to confirm Chief Wagner's decision to terminate him in the closed executive session, and that they failed to vote on his termination in public session in violation of the Pennsylvania Sunshine Act.

Subsequently, on January 5, 2017, when PMRPC conducted its public meeting, Chief Wagner announced that "there was a termination of an officer due to disciplinary reasons." (Doc. 9, Ex. D), (Doc. 14-1 at 74). Further, when PMRPC held the public meeting on January 5, 2017, there was no notice or announcement made or any information provided that indicated plaintiff was the officer being terminated. Nor was there any discussion or vote regarding plaintiff's termination at the public meeting. However, on January 6, 2017, Chief Wagner wrote a letter to plaintiff and informed him that his employment with PMRPD had been terminated. Despite having received the letter, plaintiff alleges that he did not learn of the Sunshine Act violation until March 2, 2017, when Chief Wagner testified at his unemployment compensation hearing. (Doc. 9, Ex. C). Chief Wagner also testified at plaintiff's unemployment compensation hearing that PMRPC typically tries not to name the officer who is being terminated for personnel reasons during its public meeting. (Id.).

5

On February 6, 2017, plaintiff's counsel wrote letters to PMRPC and Chief Wagner requesting a statement of charges against plaintiff and a post-termination hearing before a neutral factfinder. (Doc. 9, Ex. E). Despite these letters, plaintiff was not given a post-termination hearing by Chief Wagner, PMRPD, PMRPC, or by the Individual Commissioners.

Additionally, PMRPC and the Association entered into a Collective Bargaining Agreement ("CBA") that delegates all disciplinary authority to the Chief of Police. (Doc. 9, Ex. F). The CBA also provides that all disciplinary action shall be grievable and governed by the CBA's three-tiered grievance procedure. Soon after his termination, plaintiff requested the Association to file grievance with PMRPD and, the Association filed a grievance within ten days of his termination. The next day, Chief Wagner issued a written denial of the grievance. Plaintiff then asked the Association to arbitrate PMRPD's decision to terminate his employment pursuant to the final step of the grievance procedure. Nonetheless, the Association did not hold a vote among its members to determine whether it would arbitrate the decision to terminate plaintiff's employment. Plaintiff made repeated requests to the Association for an explanation why it did not hold a vote and why it opted not to arbitrate his termination but the Association failed to provide one. Rather, the Association's members told him that his grievance was "not going anywhere." Thus, plaintiff alleges that the Association failed to investigate the propriety of his termination or the veracity of the misconduct charges asserted against

6

him.

## II.    PROCEDURAL BACKGROUND

On March 30, 2017, plaintiff filed a praecipe for writ of summons in the Monroe County Court of Common Pleas commencing his civil action against moving defendants. (Doc. 18-1). On June 5, 2017, plaintiff filed his original complaint in the Monroe County Court of Common Pleas against the 20 moving defendants. (Doc. 2-1). On June 15, 2017, moving defendants filed a notice of removal of this case to federal court, pursuant to 28 U.S.C. §1446(b), based on federal question jurisdiction under 28 U.S.C. §1331. (Doc. 1). On June 23, 2017, moving defendants filed a partial motion to dismiss plaintiff's original complaint, (Doc. 5), and a brief in support, (Doc. 6).

On July 7, 2017, plaintiff filed an amended complaint, (Doc. 9), again raising due process claims against moving defendants pursuant to 42 U.S.C. §1983. On July 21, 2017, moving defendants filed a partial motion to dismiss with prejudice regarding Counts I, III, IV, V, VI, and VII of plaintiff's amended complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. 14). They submitted exhibits with their motion. (Doc. 14-1). Moving defendants simultaneously filed their brief in support of their motion. (Doc. 15). On August 3, 2017, plaintiff filed his brief in opposition to moving defendants' motion to dismiss, (Doc. 17), with an attached answer to defendants' motion, (Doc. 17-1). Since answers to dispositive motions are not

utilized in federal court, plaintiff's answer will be stricken from the record as unnecessary. On August 11, 2017, moving defendants filed a reply brief. (Doc. 18). As such, the motion seeking partial dismissal of plaintiff's amended complaint is ripe for disposition.

Since moving defendants seek dismissal with respect to Counts I, III, IV, V, VI, and VII of plaintiff's amended complaint, those counts will be primarily addressed herein.

In Count I, plaintiff raises a claim under the Pennsylvania Sunshine Act, 65 Pa.C.S.A. §701-716, against defendants PMRPC, Moyer, Depiano, Courtright, Adams, Jablowski, Oser, Igdalsky, Ruiz-Smith, Kelly, Megliola, and Lamberton, i.e., the Commission and the Individual Commissioners. Plaintiff alleges that the Commission and the Individual Commissioners violated the Sunshine Act by failing to hold a public vote to terminate him. In Count III, plaintiff seeks a mandamus against defendants PMRPC, PMRPD, Barrett Township, Mount Pocono Borough, Coolbaugh Township, Tobyhanna Township, and Tunkhannock Township. Plaintiff alleges that to date, these defendants failed to hold a post-termination hearing as they are required to do, and that there are no other adequate remedies to redress the violations of his due process rights. In Counts IV, V, and VI, plaintiff raises procedural due process claims against moving defendants essentially alleging that, pursuant to Pennsylvania law, he had a property interest protected under 14th Amendment with respect to his continued employment as a police officer with

PMRPC, PMRPD and Member Municipalities, and that he was entitled to a full evidentiary hearing after his termination. Finally, in Count VII, plaintiff raises a stigma-plus procedural due process claim against Chief Wagner.[2] Plaintiff's due process claims are brought pursuant to 42 U.S.C. §1983.

As relief, plaintiff seeks reinstatement to his position of a patrol officer with PMRPD. He also requests compensatory damages, back and front pay, as well as punitive damages against moving defendants. Plaintiff does not specifically state if he sues the 11 Individual Commissioners in their personal and in their official capacity. He does however allege in Count V, (Doc. 9, ¶192), that the Individual Commissioners acted at all times under color of state law. He also alleges in Count VI, (Doc. 9, ¶205), that Chief Wagner acted at all times under color of state law.

The court has jurisdiction over this case pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a) because plaintiff asserts violations of his due process rights under the 14th Amendment of the U.S. Constitution. The court can exercise supplemental jurisdiction over plaintiff's state law claims under 28 U.S.C. §1367. Venue is appropriate in this court since the alleged constitutional violations occurred in this district and all parties are located here. *See* 28 U.S.C. §1391.

---

[2]In his amended complaint, plaintiff erroneously labels two counts as Count VII. The second Count VII is actually Count VIII and is a state law claim for Breach of Duty of Fair Representation. (Doc. 9 at 44).

## III.    STANDARDS OF REVIEW

### *A.    Motion to Dismiss*

Moving defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (*quoting* Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

10

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

### B.    Section 1983

The municipal defendants and the individual defendants are state actors

for purpose of §1983. *See* [Kline ex rel. Arndt v. Mansfield, 454 F.Supp.2d](#)
[258, 262 (E.D.Pa. 2006)](#).

To state a claim under section 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. [West v. Atkins, 487 U.S. 42 (1988)](#); [Parratt v.](#) [Taylor, 451 U.S. 527, 535 (1981)](#), overruled in part on other grounds, [Daniels](#) [v. Williams, 474 U.S. 327, 330-331 (1986)](#). If a defendant fails to act under color of state law when engaged in the alleged misconduct, a civil rights claim under section 1983 fails as a matter of jurisdiction, [Polk Cnty. v. Dodson, 454](#) [U.S. 312, 315 (1981)](#), and there is no need to determine whether a federal right has been violated. [Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982)](#).

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." [Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir.](#) [1988)](#). *See also* [Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)](#)(citing *Rode*). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." [Rode, 845 F.2d at 1207](#). Accord [Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997)](#); [Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)](#). As explained in *Rode*:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

With respect to punitive damages for a §1983 violation, this remedy is only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30 (1983). Regarding federal civil rights claims, "reckless indifference" refers to the defendant's knowledge of the illegality of his actions, not the egregiousness of his actions. Alexander v. Riga, 208 F.3d 419, 431 (3d Cir. 2000) (citing Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999)).

Since plaintiff names the Member Municipalities as defendants and alleges that they violated his constitutional rights, the standards annunciated in *Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), apply to his due process claims against them. A municipality is a "person" for purposes of §1983. *See* Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 689 (1978)). But §1983 does not allow municipal liability under a theory of

13

*respondeat superior*. Id. A municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. Id.; *see also* Mann v. Palmerton Area School Dist., 33 F.Supp.3d 530, 540-41 (M.D.Pa. 2014).("Municipal liability only attaches when a plaintiff demonstrates that an official policy or custom caused the asserted constitutional deprivation.") (citation omitted). The plaintiff bears the burden of identifying the policy or custom. Id. This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id. "Additionally, if the policy at issue relates to a failure to train or supervise municipal employees, "liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila*., 181 F.3d 339, 357 (3d Cir. 1999) (citation omitted).

## IV.    DISCUSSION

### A.    *Claim for Punitive Damages against Member Municipalities*

In Count IV of his amended complaint, plaintiff raises a due process claim against PMRPC, PMRPD, Barrett Township, Mount Pocono Borough, Coolbaugh Township, Tobyhanna Township and Tunkhannock Township, and he requests punitive damages against these Member Municipalities. (Doc. 9

14

at 34). The law is clear that punitive damages cannot be sought against municipalities under §1983. *See* City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 101 S. Ct. 2748 (1981). As such, plaintiff's claim for punitive damages against the Member Municipalities will be **DISMISSED WITH PREJUDICE**. Further, insofar as plaintiff seeks punitive damages against the 11 Individual Commission defendants in Count V in their official capacity, (Doc. 9 at 37), and against Chief Wagner in Count VI, (Doc. 9 at 40), and in Count VII, (Doc. 9 at 43), in his official capacity, these requests for relief will also be **DISMISSED WITH PREJUDICE**. *See* Yelland v. Abington Heights School District, 2017 WL 529837 (M.D.Pa. Feb. 9, 2017). Plaintiff can only seek punitive damages against all of the individual defendants under §1983 in their personal capacity.

Moreover, to the extent plaintiff names the 11 Individual Commissioners of PMRPC and Chief Wagner as defendants in addition to PMRPC and sues them in their personal and official capacities, these defendants, in their official capacity, are part of the Commission itself. *See* Kentucky v. Graham, 473 U.S. 159, 165-166 (1985) (Section 1983 suits against individuals in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent.") (citation omitted). Thus, plaintiff's claims against the 11 Individual Commissioners and Chief Wagner in their official capacity are redundant of the claims plaintiff asserts against PMRPC. *See* Swedron v. Borough, 2008 WL 5051399, *4 (W.D. Pa. Nov. 21, 2008)

(Court held that official capacity claims under §1983 against defendant police officers should be dismissed since they were redundant of the claims against defendant Borough) (citing *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988)); *Brice v. City of York*, 528 F.Supp.2d 504, 516 n. 19 (M.D. Pa. 2007) ("claims against state officials in their official capacities merge as a matter of law with the municipality that employs them."); Hill v. Bor. of Kutztown, 455 F.3d 225, 233 n. 9 (3d Cir. 2006). As such, plaintiff's claims against the 11 Individual Commissioners and Chief Wagner in their official capacity are **DISMISSED WITH PREJUDICE**. The 11 Individual Commissioners and Chief Wagner can only be sued under §1983 in their personal capacity. Donovan v. Pittston Area School Dist., 2015 WL 3771420, *16; Kohn v. School Dist. of City of Harrisburg, 817 F.Supp.2d 487, 510 (M.D.Pa. 2011) ("The individual defendants can certainly be sued in their personal capacities for actions they undertook as part of their jobs on their Boards.").

### B. *Pennsylvania Sunshine Act Claim, Count I*

Defendants argue that plaintiff's claim under the Sunshine Act should be dismissed since it was not timely. "Legal challenges alleging violations of the Sunshine Act must be brought within 30 days of the date of an open meeting, or 30 days from the date of discovery of an alleged closed meeting, but no more than one (1) year after the date of the meeting in question." I-Lead Charter School-Reading v. Reading School District, 2017 WL 2653722, *5 (E.D.Pa. June 20, 2017); *see also* 65 Pa.C.S.A. §713. Plaintiff

contends that defendants' action in terminating his employment in the closed executive session on January 5, 2017, and their failure to then hold a public vote regarding his termination violates the Sunshine Act. Plaintiff argues that the statute of limitations on his Sunshine Act claim commenced to run when he discovered the alleged unlawful conduct by defendants at his March 2, 2017 Unemployment Hearing during the testimony of Chief Wagner. Plaintiff states that since he filed his praecipe for writ of summons against defendants on March 30, 2017, he filed his Sunshine Act claim timely.

In his amended complaint, (Doc. 9, ¶98), plaintiff alleges that during the Commission's January 5, 2017 public meeting, held after its closed executive session, "Chief Wagner announced that an officer had been terminated due to disciplinary reasons." However, plaintiff states that the Individual Commissioners failed to then vote on his termination in the public session and, thus, violated the Sunshine Act. As defendants state, "[t]his alleged failure to put Plaintiff's termination to a public vote occurred at a meeting open to the public", "at which the public [including plaintiff] would have had the opportunity to comment on the decision and raise any questions they may have had." (Doc. 18 at 3). Further, as defendants state since the termination decision was made at the public session, "the public [ ] had the opportunity to comment on [the] decision and question why certain information was discussed outside the public view." (Id. at 4).

Significantly, on January 5, 2017, prior to the public meeting, plaintiff

had his *Loudermill* pre-termination hearing regrading the charges Chief Wagner filed against him leading to his paid suspension. Moreover, the very next day after the public meeting, Chief Wagner sent plaintiff a letter advising him that he was terminated. Therefore, it should have been abundantly clear to plaintiff that the officer to whom Chief Wagner was referring at the January 5, 2017 public meeting was plaintiff. As such, the latest date that plaintiff should have discovered the alleged violation of the Sunshine Act was the date he received Wagner's termination letter and not when Wagner testified at his Unemployment Hearing.

Lastly, insofar as plaintiff asserts his claim under the Sunshine Act against defendants Moyer, Depiano, Courtright, Adams, Jablowski, Oser, Igdalsky, Ruiz-Smith, Kelly, Megliola, and Lamberton, i.e., the Individual Commissioners, these defendants cannot be held liable under the Act because they are not agencies. Under the Sunshine Act, an action can be brought by a person to challenge actions of an agency. Specifically, the Act provides that an action can be asserted by "any person where the agency whose act is complained of is located or where the act complained of occurred." 65 Pa.C.S.A. §715. *See* I-Lead Charter School-Reading, 2017 WL 2653722, *5. The Individual Commissioners do not fit the definition of a public agency under Pennsylvania law. 65 Pa.C.S. §703. In fact, Pennsylvania courts have found that an individual member of a public body is not an "agency" as defined by the Sunshine Act. *See* Ristau v. Casey, 167

Pa.Cmwlth. 118, 647 A.2d 642, 646 (Pa.Commw. 1994); Mazur v. Washington County Redevelopment Authority, 900 A.2d 1024 (Pa.Commw. 2006).

Thus, plaintiff's claim under the Sunshine Act in Count I of his amended complaint will be **DISMISSED WITH PREJUDICE** since it is time-barred and since the Individual Commissioners are not agencies.

### C. *Procedural Due Process Claims, Counts IV, V, and VI*

In Count IV, plaintiff raises claims for violation of his procedural due process rights against the PMRPC, PMRPD, and the Member Municipalities. In Counts V and VI, he raises due process claims against the Individual Commissioners, and against Chief Wagner, respectively. Plaintiff contends that he possessed a protected property interest in his employment as a police officer with PMRPD pursuant to the Borough Code and/or the Police Tenure Act. Plaintiff alleges that his due process rights were violated by defendants since they failed to provide him with a post-termination hearing regarding the deprivation of his protected property interest in his job despite his requests for such a hearing.

The 14th Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. "[A] procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements."

19

[Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006)](#), *aff'd*, [248](#) [F.App'x 302 (3d Cir. 2007)](#); *see also* [Shoats v. Horn, 213 F.3d 140, 143 (3d](#) [Cir. 2000)](#). To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." [Hill v. Borough of](#) [Kutztown, 455 F.3d 225, 234](#) (citing [Elmore v. Cleary, 399 F.3d 279, 282 (3d](#) [Cir. 2005)](#)). Whether a legitimate entitlement exists is a question of state law. [Hill, 455 F.3d at 234](#). Thus, while state law determines if an employee has a property right in continued employment, the process that is due is a question of federal law. [McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir. 1995)](#).

Under Pennsylvania law, "[a] local government in Pennsylvania cannot provide its employees with tenure status unless there exists some express legislative authority for doing so." [Elmore, 399 F.3d at 282](#) (citing [Stumpp v.](#) [Stroudsburg Mun. Auth., 659 A.2d 333, 334 (Pa. 1995)](#)). A contract for employment also confers a property right when "the contract itself includes a provision that the state entity can terminate the contract only for cause." [Dee](#) [v. Borough of Dunmore, 549 F.3d 225, 230-31 (3d Cir. 2008)](#) (citing [Unger v.](#) [Nat'l Residents Matching Prog., 928 F.2d 1392 (3d Cir. 1991)](#)). Thus, as the Pennsylvania Supreme Court held in Pipkin v. Pennsylvania State Police, 548 Pa. 1, 6, 693 A.2d 190, 192 (Pa.1997), "[a] governmental employee only has a personal or property right in his employment where he can establish a legitimate expectation of continued employment through either a contract or

statute." "If state law creates a property interest for purposes of the Fourteenth Amendment, a person cannot be deprived of that interest other than in accordance with federal standards of due process." Behne v. Halstead, 2014 WL 1689950, *12 (M.D.Pa. April 29, 2014) (citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487 (1985)). "In the employment context, notice and an opportunity to be heard typically refer to having 'some kind of a hearing' before being discharged." Id. (citing Loudermill, 470 U.S. at 542

"Denial of continued public employment can also constitute deprivation of a liberty interest." Baraka v. McGreevey, 481 F.3d 187, 209 (3d Cir. 2007) (citing Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972))." In the public employment context, this liberty interest arises "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Roth, 408 U.S. at 573 (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)).

Here, plaintiff argues that he had a legitimate expectation of continued employment in his police officer job with PMRPD through state statutes, namely, the Pennsylvania Borough Code, 53 P.S. §46171, *et seq*., (which was recodified as 8 Pa.C.S.A. §1190 on June 17, 2014), and the Police Tenure Act ("PTA"), 53 P.S. §811, *et seq*., and that they gave him a protected property interest.

In Maule v. Susquehanna Reg'l Police Comm'n, 2007 WL 2844587, at

*7 (E.D.Pa. Sept. 27, 2007), the court stated that the Borough Code provides, in part, that "'[n]o person employed in any police or fire force of any borough shall be suspended, removed or reduced in rank' except for a number of enumerated reasons which imply that a police officer may only be suspended, removed or reduced in rank for cause." (citing 53 P.S. §46190, now §1190 of the Borough Code). Section 1190 now provides "[n]o person employed in any police or fire force of any borough may be suspended without pay, removed or reduced in rank except for [7 enumerated] reasons."

Further, §1191 of the Borough Code provides, in part, "[i]f the person suspended, removed or reduced in rank shall demand a hearing by the commission ... [s]uch person may make written answers to any charges ... The commission shall grant him a hearing ... At [the] hearing, the person against whom the charges are made may be present in person and by counsel." The court in Maule, 2007 WL 2844587 at *6, stated "[u]nder either [the PTA or the Borough Code], full-time municipal police officers enjoy a protected property interest in their position, together with the concomitant right to procedural due process when their employment is terminated."

Defendants state that "neither the Borough Code nor the Police Tenure Act apply to intergovernmental non-profit police commissions such as the PMRPC." (Doc. 15 at 18). Initially, the court finds that plaintiff Gaus was not employed by a borough. If he was, then there is no doubt that he had a protected property interest in his police officer position. *See* Mariano v.

22

Borough of Dickson City, 40 F.Supp.3d 411 (M.D.Pa. 2014). On the contrary, plaintiff was employed by the PMRPC, and thus, the Borough Code does not apply to him. *See* Maule, 2007 WL 2844587, at *7 (court found that since plaintiff police officer was employed by "Susquehanna Regional Police Commission, a body that was established to provide police services and protection to Marietta Borough, East Donegal Township and Conoy Township" he "was not an employee of any particular 'borough'", and that §46190 of the Borough Code did not apply to him); *see also* Borough Code, 8 Pa.C.S.A.§1122(a) and (b).

Next, the court will consider whether the PTA applies to plaintiff.

The PTA protects full-time police officers in "any township of the second class" regardless of the size of the police force, 53 P.S. §812, and it grants "job tenure to all police employed by such municipalities." Deskins v. Borough of W. Brownsville, 388 Pa. 547, 131 A.2d 101, 102 (1957) (citation omitted). The PTA provides extensive procedural protections to [police officers], including the right to demand a public hearing and the right to appeal the results of a public hearing to the Pennsylvania Court of Common Pleas. 53 Pa. Stat. Ann. §814, §815. The PTA "is a statute addressing removals, suspensions, and rank reductions of Pennsylvania municipal police officers." Dombrosky v. Banach, 2012 WL 1899656, *9 (M.D.Pa. May 24, 2012), *aff'd* 557 Fed.Appx. 107 (3d Cir. 2014).

23

Section 812 of the PTA provides, in pertinent part, as follows:

No person employed as a regular full time police officer in any police department of any township of the second class, or any borough or township of the first class within the scope of this act, [ ], shall be suspended, removed or reduced in rank except for the following reasons: (1) physical or mental disability affecting his ability to continue in service ... (2) neglect or violation of any official duty; (3) violating of any law which provides that such violation constitutes a misdemeanor or felony; (4) inefficiency, neglect, intemperance, disobedience of orders, or conduct unbecoming an officer; (5) intoxication while on duty.

As such, "federal district courts in Pennsylvania have recognized that the Police Tenure Act creates a constitutionally protected property interest in an individual's employment as a police officer." Dombrosky, 2012 WL 1899656, *9 (citations omitted).

Additionally, "Sections 2 and 4 of the [PTA], 53 P.S. §§812, 814, establish the procedures with which borough councils must comply in exercising their discretionary power to remove a police officer." Albrechta v. Shickshinny, 129 Pa.Cmwlth. 206, 565 A.2d 198, 211 (Pa.Commw. 1989). Council must provide the officer with a statement of the charges, and then council votes on whether to dismiss the officer. Thereafter, council must schedule and conduct a public hearing pursuant to Section 4 of the PTA, 53 P.S. §814. Id. Indeed, Section 4 provides that "[i]f the person sought to be suspended or removed shall demand a public hearing, the demand shall be made to the appointing authority" and, that "[t]he appointing authority shall

24

grant him a public hearing, which shall be held within a period of ten days from the filing of charges in writing, ...." This section also requires that "[a] written record of all testimony taken at [the public] hearings shall be filed with and preserved by the appointing authority" as well as sealed.

Defendants cite to the Third Circuit's decision in Dombrosky, 557 Fed.Appx. 107, to support their contention that the PTA does not apply to plaintiff. In Domborsky, *id.* at 108-09, "Westfall Township and Matamoras Borough entered into a Regionalization Agreement that provided for a merged, unified police department" and "[t]he Agreement created a joint commission, the Eastern Pike Regional Police Commission, which was responsible for supervising the newly formed Eastern Pike Police Department (EPPD)." The district court in *Dombrosky* found, in part, that the plaintiff police officer's continued employment with the EPPD was not protected by the Police Tenure Act. The Third Circuit in Dombrosky, *id.* at 111, held that "[t]he Police Tenure Act provides protections for officers employed by towns and boroughs", but that "[i]t does not apply to officers employed by regional police departments." (citing Maule, 2007 WL 2844587, at *8). Thus, the Third Circuit found that the Police Tenure Act did not apply to the Eastern Pike Regional Police Commission.

In the present case, the court finds the *Dombrosky* case as well as the *Maule* case persuasive. In particular, the court in Maule, 2007 WL 2844587,

at *8, held that §812 of the PTA did not apply to the plaintiff since he was employed as the police chief with Susquehanna Regional Police Department, and thus, "[h]e was not an employee of Marietta Borough, East Donegal Township or Conoy Township", "[r]ather, he was an employee of the Susquehanna Regional Police Commission, a municipal police commission created by Marietta Borough, East Donegal Township and Conoy Township." The court in Maule, *id*., concluded that "the Pennsylvania Legislature has not enacted legislation regulating police officers of a regional police department as it has for borough, township, city and state police officers" and that "[i]t is not for this court to act as a super legislature to fill in such a gap in the statutory scheme." Therefore, the court in *Maule* found that its plaintiff, as a municipal employee in Pennsylvania, was an at-will employee who was "subject to the possibility of summary removal by the municipal employer for any reason or no reason at all." Id. The court concurs with the rationale of the *Maule* Court and finds that plaintiff Gaus was not an employee of any of the Member Municipalities. Rather, he was clearly an employee of PMRPC.

Additionally, as defendants point out, (Doc. 15 at 18), "the Agreement between the Member Municipalities establishing the PMRPC, which is attached to Plaintiff's Complaint as 'Exhibit A', specifically states that '[a]s an independent, non-profit, unincorporated association or consortium, the PMRPC shall not be governed by Borough or Township Codes, except to the extent required by Pennsylvania Law.'" (Doc. 9-1 at 7).

The court also finds no merit to plaintiff's contention that each of the Member Municipalities was his joint employer, and that each individual municipality is liable regarding his alleged due process violations. Indeed, if the Borough Code, 8 Pa.C.S.A. §1122(b), applied to plaintiff as he claims, it specifically states that:

> Police officers of the police force of a municipal corporation, regional police force or other governmental entity so appointed shall, insofar as civil service and pensions are concerned, be deemed to be appointees and employees only of the municipal corporation, regional police force or other government entity furnishing their service and making the original appointment.

Conspicuously missing from plaintiff's brief is any mention of §1122(b) of the Borough Code which indicates that the Pennsylvania legislature has clearly intended that police officers of a regional police force are only employees of the regional police force. This section shows that the Member Municipalities were not plaintiff's joint employers.

The court also agrees with defendants and their reasoning, (Doc. 17 at 16-17), that plaintiff's reliance on the case of Borough of Lewistown v. Pennsylvania Labor Relations Board, 558 Pa. 141 (Pa. 1999), to support his argument that the Member Municipalities were his joint employers is misplaced since that case dealt with Act 111, which granted collective bargaining rights to police officers and firefighters. Id. at 152; *see also* 43 P.S. §217.1. The *Borough of Lewistown* case dealt with the analysis of a joint employer under a labor relations statute, i.e., Act 111, and did not pertain to

27

the issue of joint employer status under the PTA and the Borough Code regarding officers, such as plaintiff Gaus, employed by a regional police department, namely, PMRPD. On the other hand, the *Dombrosky* case and the *Maule* case did address police officers employed by regional police departments. Thus, the court finds that the Member Municipalities were not plaintiff Gaus's joint employers.

As such, plaintiff fails to establish that he had a property interest in his continued employment as a police officer with the PMRPD under either the Borough Code or the Police Tenure Act, and he does not state a cognizable claim for violation of his procedural due process rights under the 14th Amendment since he has not established that a substantive right has been affected. It is the responsibility of the Pennsylvania legislature, not a function of this court, to decide and enact applicable law governing police officers of a regional police department, or to expand the Borough Code and the Police Tenure Act to apply to a regional police department.

Moreover, even if plaintiff did possesses a constitutionally protected property interest in his continued employment under the PTA and the Borough Code, he fails to establish that the procedures available to him regarding his termination did not provide due process of law. In *Loudermill*, the Court concluded that "all the process that is due is provided by a pretermination opportunity to respond coupled with post-termination administrative [or judicial] procedures ...." 470 U.S. at 547–48, 105 S.Ct. 1487. Plaintiff had a

full hearing after his suspension but not after his termination. Defendants state that nonetheless plaintiff still had an adequate remedy available to him after his termination under the PTA, namely, an appeal of his termination to the Monroe County Court of Common Pleas. In Rife v. Borough of Dauphin, 647 F. Supp. 2d 431, 449 (M.D.Pa. 2009), "plaintiff was afforded a hearing with regard to his suspension", but since he thought the hearing was biased against him, he did not complete the hearing choosing instead to resign. Even though plaintiff Rife did not finish with his due process hearing after his suspension, the court stated that "he could have finished the hearing and appealed any decision to the Dauphin County Court of Common Pleas pursuant to §815 of the Police Tenure Act; Plaintiff chose not to do so." Id. The court also stated that since "the Police Tenure Act provided Plaintiff with a post-deprivation right to appeal to the Pennsylvania courts, as a matter of law, he has no claim that he was denied his right to procedural due process." Id.

Similarly, in the instant case, even though plaintiff Gaus was not provided with a post-termination hearing, assuming *arguendo* that the PTA applied, he still had an adequate remedy available to him after he was suspended, after he had a pre-termination hearing and, after he was then terminated the next day, namely, an appeal to the county court. While plaintiff maintains that an appeal to the county court is only available after a post-termination hearing has been held, he fails to cite to any authority

29

supporting his contention. Further, neither the PTA nor the Borough Code state that a post-termination hearing is required before an appeal can be filed to the county court. *See* 53 P.S. §815; 8 P.S. §1191(c); *see also* Albrechta v. Shickshinny, 129 Pa.Cmwlth. 206, 565 A.2d 198, 211 (Pa.Commw. 1989) (court did not indicate that police officer could not pursue his right to appeal his termination under the PTA to county court until he had a post-termination hearing). "When adequate post-deprivation procedures exist, a plaintiff must avail him or herself of those procedures to properly state a procedural due process claim." Kairo-Scibek v. Wyoming Valley West Sch. Dist., 880 F. Supp.2d 549, 561 (M.D.Pa. 2012).

Thus, Counts IV through VI of plaintiff's amended complaint will be **DISMISSED WITH PREJUDICE** as against all defendants named therein for failure to state due process claims pursuant to Fed.R.Civ.P. 12(b)(6).

### D. *Claim for Mandamus, Count III*

In Count III, plaintiff requests the court to direct defendants PMRPC, PMRPD, Barrett Township, Mount Pocono Borough, Coolbaugh Township, Tobyhanna Township and Tunkhannock Township "to hold a post-termination evidentiary due process hearing, and award[] such other relief ..., including ... reinstatement [to his police officer position with PMRPD] and back pay ...." Defendants move to dismiss plaintiff's common law claim for writ of mandamus in Count III arguing that plaintiff did not have any clear legal right and that they did not owe him any duty. Defendants also argue that even if the

30

Borough Code and the PTA applied, as plaintiff contends, then he had adequate appropriate remedies at law available to him regarding his termination since these statutes provide that he could have filed a post-termination appeal to the court of common pleas, which he did not pursue. Plaintiff again contends that the appeal provisions of the PTA and the Borough Code only apply when the police officer has received a post-termination hearing, and that they do not apply in his case since he did not receive such a hearing. He cites to 53 P.S. §815 and 8 Pa. C.S. §1191(c),

In Kuren v. Luzerne County,146 A.3d 715, 749-50 (2016), the Supreme Court of Pennsylvania noted that "a writ of mandamus is an extraordinary remedy" and "[t]he right to mandamus arises only to direct a governmental official to perform an act as to which there is a clear legal duty." Specifically, the Court stated that mandamus "will only lie to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and want of any other appropriate and adequate remedy." Id. at 750-51 (citation omitted).

Initially, as discussed above, the court will dismiss plaintiff's claim for mandamus since it has found that he did not have a protected property right to his continued employment as a police officer with PMRPD and, thus, moving defendants did not owe him a clear duty to provide him with a post-termination hearing.

Moreover, even if the Borough Code and the PTA applied to plaintiff,

31

then he had appropriate and adequate remedies at law available to him. "Section 5 of the [PTA], 53 P.S. §815, provides dismissed officers with the right of an appeal to common pleas court." Id. However, plaintiff alleges that he did not receive a post-termination hearing after being notified of the charges against him, after he was suspended and received a pre-termination due process hearing, and after the Individual Commissioners voted to terminate his employment. Plaintiff then states that since he did not receive a post-termination hearing, he was not required to file an appeal of the decision to terminate him to the Monroe County Court of Common Pleas under §5 of the PTA. Plaintiff also states that "mandamus is the appropriate remedy to compel a hearing where a required hearing has been denied to a public employee with a property interest in continued employment." (Doc. 17 at 22) (citing Botti v. Sw. Butler Cnty. Sch. Dist., 529 A.2d 1206, 1208–10 (Pa.Commw.Ct. 1987)).

Section 5 of the PTA simply states that "[t]he suspended or dismissed employe[e] shall have the right to appeal to the court of common pleas of the county in which he was employed." 53 P.S. §815. In this case, plaintiff was advised of the misconduct charges against him on December 28, 2016, when Chief Wagner suspended him and placed him on paid administrative leave. After his suspension, plaintiff then received a pre-termination *Loudermill* hearing on January 5, 2017, regarding the charges against him and he

testified at this hearing. It was then announced later that day by the Individual Commissioners, in a public session, that an officer was being terminated. Plaintiff was advised that he was terminated by Chief Wagner in a letter dated January 6, 2017. Thus, plaintiff received written charges and a hearing before he was terminated. The court finds that plaintiff could have then pursued his post-deprivation right to appeal to the Pennsylvania courts pursuant to §815 of the PTA, including an appeal to the court of common pleas and then to the Commonwealth Court. *See* Kelly v. Warminster Tp. Bd. of Sup'rs, 44 Pa.Cmwlth. 457, 404 A.2d 731 (Pa.Commw.Ct. 1979).

Therefore, plaintiff had a remedy under §5 of the PTA, if this statute applied to him, and he could have appealed his termination to the court of common pleas within 30 days of the decision to terminate him. Id. (citing 42 Pa.C.S. §5571(b) (which provides a thirty-day time limit to file appeals to common pleas courts from municipal actions). As moving defendants explain, the *Botti* case is distinguishable from the instant case since it dealt with the issue of whether mandamus was an appropriate remedy where a former principal sought to compel the school district to conduct a hearing to determine if his demotion was proper under Section 1151 of the Pennsylvania Public School Code of 1949, 24 P.S. §11-1151, a completely different statute than the PTA and one that pertains to the rights of professional public school

employees. (Doc. 18 at 13-14).

Thus, plaintiff had an available remedy to appeal the decision to terminate him under §5, if the PTA applied, and since he failed to avail himself of the PTA's statutory appeal provision, mandamus is not appropriate. *See* Albrechta, 565 A.2d at 212 (citing Gauden v. Borough of Roscoe, 79 Pa. Commonwealth Ct. 589, 470 A.2d 191 (1984)). In *Rife, supra*, the court held that §815 of the PTA provided the police chief with a remedy, namely, a post-deprivation right to appeal to the county court of common pleas, despite the fact that he claimed his pre-deprivation hearing on misconduct charges after he was suspended was biased against him and he resigned before the hearing was completed. In this case, like in *Rife*, plaintiff was afforded a hearing regarding his suspension and, in fact, he testified at it. Thus, as in *Rife*, after plaintiff's hearing and after he received Chief Wagner's termination letter, he could have appealed the decision to the court of common pleas if the PTA applied to him.

Thus, plaintiff's claim for a mandamus in Count III of his amended complaint will be **DISMISSED WITH PREJUDICE**.

### E. Fourteenth Amendment Stigma-Plus Claim

Count VII of plaintiff's amended complaint, is a 14th Amendment "stigma-plus" due process claim against Chief Wagner claiming a deprivation

34

of plaintiff's liberty interest in his reputation. Specifically, plaintiff alleges that "Chief Wagner created and disseminated a false and defamatory impression about [him] in connection with the termination of [his] employment." Plaintiff also alleges that "[a]fter investigating the 'anonymous' complaint lodged against [him], Chief Wagner suspended him based on allegations that [he] falsified entries in his patrol logs" and, that "Chief Wagner informed Department officers, the Individual Commissioners, and others that [he] had falsified entries in his patrol logs." Plaintiff further alleges that Chief Wagner's publicized statements about him were "substantially and materially false" and, that "[t]hese statements implicate [him] in possible criminal activity and, as such, carry the stigma of moral turpitude that infringes upon [his] reputation and integrity." Plaintiff then states that Chief Wagner terminated him based on the false reports regarding the entries in his patrol logs. As such, plaintiff states that he was deprived of his liberty interest in his good reputation without due process since he was not afforded a post-termination name-clearing evidentiary hearing. (Doc. 9 at 41-42).

"[R]eputation alone is not an interest protected by the Due Process Clause." Dee v. Borough of Dunmore, 549 F.3d 225, 233-34 (3d Cir. 2008) (citations omitted). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." Id. at 233-34 (citations omitted). "[M]ere damage to reputation, apart from the impairment

of some additional interest previously recognized under state law, is not cognizable under the due process clause." Sturm v. Clark, 835 F.2d 1009, 1012 (3d Cir. 1987). Thus, "defamation is actionable under [§1983] only if it occurs in the course of, or is accompanied by, a change or extinguishment of a right or status guaranteed by state law or the Constitution." Clark v. Twp. of Falls, 890 F.2d 611, 619 (3d Cir. 1993). "In the public employment context, the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' then it deprives the employee of a protected liberty interest." Hammond v. Chester Upland School Dist., 2014 WL 4473726, *8 (E.D.Pa. Sept. 09, 2014) (citing Hill, 455 F.3d at 236); Damiano v. Scranton School District, 135 F.Supp.3d 255 (M.D.Pa. 2015). "A constitutionally protected property interest qualifies as a sufficient plus." Dee, 549 F.3d at 234. However, even though the court has found that plaintiff did not have a property interest in his continued employment as a police officer with the PMRPD, this is not fatal to his deprivation of liberty claim. *See* Demko v. Luzerne County Community College, 113 F. Supp.2d 722, 734 (M.D.Pa. 2000);*see also* Goss v. Lopez, 419 U.S. 565, 574, 95 S.Ct. 729 (1975) (Court held that future employment rights may be liberty interests).

Defendants argue that plaintiff failed to establish a stigma-plus due process claim since he was granted a hearing after his suspension that comported with the requirements of Cleveland Bd. of Ed. v. Loudermill, 470

U.S. 532, 546, 105 S.Ct. 1487 (1985), despite the fact he was not later given a post-termination hearing. They state that "a pre-deprivation hearing consistent with the requirements of *Loudermill* is sufficient to act as a name-clearing hearing for purposes of a stigma-plus claim." (Doc. 15 at 27). No doubt that the opportunity for a name-clearing hearing must be given to plaintiff. *See* Demko, 113 F. Supp.2d at 734; Codd v. Velger, 429 U.S. 624, 627, 97 S.Ct. 882 (1977) ("The hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely 'to provide the person an opportunity to clear his name.'").

The court finds that plaintiff's allegations in Count VII implicated a liberty interest, and thus, he was entitled to an opportunity to be heard before he was terminated. "A pre-deprivation hearing that satisfies the requirements of *Loudermill* is adequate." Demko, 113 F. Supp.2d at 734. There is no dispute that plaintiff's pre-termination hearing provided him with the process that was due in accordance with *Loudermill.* Under *Loudermill,* plaintiff was entitled to "oral or written notice of the charges against [him], an explanation of the employer's evidence, and an opportunity to present [his] side of the story" before his employment was terminated. Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "'[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Biliski v. Red Clay Consol. Sch. Dist. Bd. Of Educ., 574 F.3d 214,

220 (3d Cir. 2009) (quoting Gilbert v. Homar, 520 U.S. 924, 930, 117 S.Ct. 1807 (1997)). The pre-deprivation procedures plaintiff received from defendants, detailed above, were sufficient to meet due process requirements.

Thus, despite the fact that the court has found plaintiff did not have a protected property interest in his job, the court considers his liberty interest claim, and finds that his pre-termination *Loudermill* hearing was sufficient process to protect that interest. *See* Scarnati v. Washington, 599 F.Supp. 1554 (M.D.Pa.), *aff'd*, 772 F.2d 896 (3d Cir.1985), *cert. denied*, 474 U.S. 1056, 106 S.Ct. 795 (1986).

Therefore, plaintiff's 14th Amendment stigma-plus claim against Chief Wagner contained in Count VII of his amended complaint will be **DISMISSED WITH PREJUDICE**.

### F. Remaining Claims

Since the court is granting Defendants' partial motion to dismiss with respect to Counts I, III, IV, V, VI, and VII of plaintiff's amended complaint, the only remaining claims are: Count II, claims for declaratory judgment under Pennsylvania Declaratory Judgment Act, 42 Pa. C.S. §§7531, *et seq*., and the Federal Declaratory Judgment Act, 28 U.S.C. §2201; and Count VIII, a state law claim for Breach of Duty of Fair Representation. In Count II, plaintiff seeks a declaratory judgment holding that: "the Commission and the Member Municipalities are the joint employers of the Department's police officers; that

38

the Police Tenure Act and/or Borough Code and the due process rights granted thereunder apply to Mr. Gaus and the Department's officers by virtue of their joint employment; and that Mr. Gaus is entitled to a due process post-termination evidentiary hearing."[3] (Doc. 9 at 25). In Count VIII, plaintiff seeks an order to vacate the Collective Bargaining Agreement, to direct the Association and PMRPC to negotiate a new Collective Bargaining Agreement, and to compel the Association and Commission to arbitrate plaintiff's termination.

Because the court has found that plaintiff's due process rights were not violated by any defendants and that the PTA and the Borough Code do not apply to plaintiff, it will dismiss Count II insofar as it seeks relief under the Federal Declaratory Judgment Act. Thus, the only remaining claims are state law claims contained in Count II and Count VIII.

Based on judicial economy, convenience and fairness to the litigants, the district court in its discretion is permitted to decline the exercise of

---

[3]Plaintiff can request declaratory relief to remedy alleged ongoing violations of its constitutional rights. *See* Blakeney v. Marsico, 340 Fed.Appx. 778, 780 (3d Cir. 2009)(Third Circuit held that to satisfy the standing requirement of Article III, a party seeking declaratory relief must allege that there is a substantial likelihood that he will suffer harm in the future)(citations omitted). However, plaintiff is not entitled to declaratory relief that defendants violated his due process rights in the past as he also alleges. Id. (citing Brown v. Fauver, 819 F.2d 395, 399-400 (3d Cir. 1987)(Third Circuit directed district court to dismiss plaintiff's §1983 claim for prospective relief where he "has done nothing more than allege past exposure to unconstitutional state action").

supplemental jurisdiction over state law claims if the court has dismissed all of the claims over which it had original jurisdiction. Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009) (citations omitted). The court has made the appropriate considerations and finds no extraordinary circumstances exist in this case to exercise supplemental jurisdiction over plaintiff's remaining state law claims contained in Count II and Count VIII. Thus, since plaintiff's federal claims over which this court had original jurisdiction shall not be permitted to proceed to trial, the court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims, Counts II and VIII, against defendants. *Id.; see also* 28 U.S.C. §1367(c)(3); Verdecchia v. Prozan, 274 F.Supp.2d 712, 728 (W.D. Pa. 2003).

As such, plaintiff's state law claims shall be dismissed without prejudice. Kach, 589 F.3d at 650 ("If a district court decides not to exercise supplemental jurisdiction and therefore dismisses state-law claims, it should do so without prejudice, as there has been no adjudication on the merits.")(citation omitted).


## V.    CONCLUSION

For the foregoing reasons, moving defendants' partial motion to dismiss, (Doc. 14), Counts I, III, IV, V, VI, and VII plaintiff's amended complaint, (Doc. 9), is **GRANTED**. The claims against moving defendants in Counts I, III, IV, V, VI, and VII are **DISMISSED WITH PREJUDICE**. Count II of plaintiff's

amended complaint is **DISMISSED WITH PREJUDICE** insofar as it seeks relief under the Federal Declaratory Judgment Act. The court declines to exercise supplemental jurisdiction over plaintiff's state law claims contained in Counts II and VIII, and these claims are **DISMISSED WITHOUT PREJUDICE**. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: November 3, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2017 MEMORANDA\17-1053-01.wpd